Good morning, Your Honors. Emmanuel Serpa on behalf of Appellant Loni Vlasis. Please allow me to reserve two minutes. Your Honors, I represented Ms. Vlasis at the Administrative Hearing. She was and still is a mentally ill homeless woman who receives treatment at a county mental health facility. Despite regular treatment there, her psychiatrist has not been able to control her symptoms sufficient enough for her to be able to sustain full-time work activity. Her two treating psychiatrists at that facility, Drs. Buchert and Donnelly, have detailed as such. At her hearing, the ALJ brings in a medical expert and they both proceed, in my opinion, to reinterpret the medical records in such a way that, although they don't dispute the underlying severe mental illness, leads them to conclude that she is not quite as limited. Despite the opinions provided by these two treating doctors, whose limitations the vocational expert testified would preclude full-time work activity, in my opinion, the medical expert, instead of fulfilling his role in helping the layperson, the ALJ, understand the medical terminology in the case, hijacks the legitimate evaluation of disability and the regulatory framework with an arbitrary standard that the ALJ then adopts. I see this occurring at the hearing. I want the case granted right then. I want to convince this ALJ that the medical expert's wrong. And at that time, I request a psychological consultative examination because I'm confident that a full battery of tests will substantiate my client's disability. Interestingly, the medical expert then volunteers on his own that he wasn't really saying that testing was necessary, despite his prior assertion that there wasn't enough testing in his record to accept the limitations of the treating doctor. This reveals the disingenuous nature of his opinion and his adversarial posture in this hearing. So then Ms. Blass fails to attend the CE appointment as she was incarcerated in Las Colinas Jail in Santee, California, for several days due to a warrant for illegal camping because of her homelessness. And that's the first I've heard of this. It's probably somewhere in there. My question is, was the fact that she was incarcerated due to illegal camping brought to the attention of the ALJ so he knew why she didn't show up? It was attempted to. So your answer is it wasn't? Yes, but it's in the record. First of all, the appointment was March 14, 2007. In a March 16, 2007 chart note, they show that she was in custody. So when a claimant fails to attend the CE, that happens all the time for various reasons. It is standard practice for our office to call the hearing office and get it rescheduled. It happens all the time. My office's records reflect that we then called the hearing office to reschedule, and that left a message with the ALJ's assistance on April 10th, April 17th, April 24th, May 1st, without a response. Normally, they contact us and get it rescheduled. There's no obstacle. Then on May 15th, when we talk to them, they say, well, the decision's being written. So we can assume, well, maybe the judge decided to grant the case, didn't feel it was necessary to send to a CE. You can assume that? At times. And also, keep in mind the... So did you assume that? You got a winner? Forget it. No. I'm just saying that the information that I had at that time was unclear. I don't know what the ALJ is going to do. That is one option. Now, it's not in the record, I'm assuming, what was said and those messages left and so on and so on. Correct. But maybe you can tell me what those messages said. Did they say, we want to reschedule because she was incarcerated? Correct. We, at that time, our office knew she was incarcerated. We found out soon thereafter. Did you make the call? No, a staff member from my office, which is... How do you know? How do we know what the staff member said? Well, they make work log entries into the computer that say, contact left a message with this office to try to get it rescheduled because of the client's incarceration. And it says that in the logs? Essentially. What do you mean, essentially? This is where lawyers get in trouble. I don't want to hear essentially. Do you have the log? Well, I don't have the log, but I want... The reason I bring this up, now keep in mind, appellate points out in the brief that a case can be denied for not attending a CE appointment, but fails to include only if you do not have a good reason for failing to attend and if a good reason is provided, the exam will be rescheduled. That's what the regulations say. The ALJ didn't offer the claimant an opportunity to provide an explanation for the failure to appear. Her office didn't respond to her on multiple attempts to contact her. In the ALJ's opinion, what did the ALJ say about the failure to appear? She didn't deny the case based upon the failure to appear. Well... She just kind of used it against the client's credibility. I was going to say, as I read the ALJ... It was indirect. It was a factor. The ALJ writes, Additionally, at the hearing, claimants represented requested the undersigned send a claimant for a consultative evaluation. The matter was held open. Arrangements were made for said examination. However, the claimant failed to appear at the scheduled... consultative evaluation and failed to participate in the examination for her own benefit. As I read that, it's held against her. I see. Now, you did this work all the time. Correct. You saw that and you probably... you must have flipped out. And so, did you then... What steps did you then take to bring to the attention of the ALJ all the phone calls that you claimed were made saying she was incarcerated and that this was inaccurate? The... She didn't say that there was some reason, though, why the claimant didn't attend. She didn't say that we were claiming something that wasn't accurate. Our remedies to appeal... My experience is that... Remedies to appeal, that's your only remedy? In my experience, 95% of the time, an ALJ does not respond to our request to revise a decision. So, how about the other five? Well, it's very rare. I mean, I can't believe that a lawyer under these circumstances wouldn't say, Time out. We've sent umpteen messages. Here are the laws that say incarceration that you were sent. You're using this against my client. We want to reopen, motion to whatever. But it goes back to why I requested it in the beginning. And remember, it was I that requested it. I requested it because it was clear this judge brought this ME to deny. And I didn't think it was necessary. I just wanted it to convince the ALJ that she could grant then. You know, time's running, and I want to change the subject to make sure that we can get in at least within a reasonable distance of ten minutes. Additional materials were sent in to the Appeals Council, and apparently they arrived pretty much at the time the Appeals Council sends out its first decision. Then the Appeals Council later looks at them and says, We see nothing to lead us to change our mind. My question for you is, there's some records here that I've got here in front of me. One of them dated 2-2708, for example. Patient seen by the doctor, chart reviewed. She's disheveled, malodorous, casually dressed, homeless, carrying a large black garbage bag with her. Was this in front of the Appeals Council as part of the materials the Appeals Council looked at and said, Nothing new here? Correct. How then does the Appeals Council get off saying, this is a question for the other side, but you might be able to help. The Appeals Council says, The additional evidence received consists of progress notes. The notes recount medication refills as well as appointments when you were described as being alert and oriented. You denied suicidal ideation, homicidal ideation, hallucinations. You denied side effect from medication other than weight gain. That seems to me a radically incomplete or even inaccurate description of the documents that were in front of the Appeals Council. Well, that's exactly what the ALJ did, selectively interpret the treating record. Selectively, I mean, as I do best. They distort the treating record. I don't know whether the Appeals Council ignored them or simply missed them. But this is not an accurate description of the documents that were in front of the Appeals Council. Those were the documents that we submitted. The document I just read to you was included with those documents. Correct. There were some documents where it did say, Well, she's coming in, she's taking her meds. But there's some others that look like she's a, I have to say, literal bag lady. She's got a large black garbage bag, and she is disheveled and malodorous and so on. Okay. Yeah. Why don't we hear from the government, and then we'll get a chance to respond. Thank you. Your Honor, may I please the Court? My name is Jacob Niko, and I represent the appellee, Michael J. Astry, Defender of the Commission of Social Security Administration. To address the appellant's contention that the evidence was put before us that they could not attend the CE and had a valid reason for it, that was not provided to the agency that I know of, and the additional evidence that we were talking about that was submitted after the Appeals Council made the decision would not know that. If there's no evidence as to why she appeared, why wouldn't it have been the most reasonable thing for the ALJ to think, Well, you know, I get testimony that this woman is incapable of appearing on time because of her depression. I mean, that seems to me, without the explanation that she's incarcerated, that seems to me the most sensible explanation. But yet the ALJ just holds it against her as if she were a normally functioning individual. Well, with all due respect, Your Honor, in this case the ALJ, I believe, went above and beyond the duty. He looked at all the medical evidence. He got a medical examiner when the two training physicians, Dr. Burchard and Dr. Donnelly, their opinions seemed to be inconsistent and not supported by their own treatment records. Got a medical expert to testify. And on top of that, at Appellant's request, scheduled a consultative exam, which would make even a more complete record. But Appellant did not show up at that. We have no record. The record before us, no explanation why they did not show up for that. And the additional submitted evidence they never once stated in there, which was provided after she was incarcerated or allegedly incarcerated, did not mention any of that. And so we try to create a fulsome record, and in the end it's the burden. A fulsome record? Excuse me, a more complete record. But the burden is on Appellant to prove their disability. They, if they felt like they wanted to have this consultative exam, which they had scheduled, it was up to them to do it. But the record was complete on its own for the ALJ to make a decision that was rational, based on substantial evidence, and free from legal error. No, it just sounds to me as though something went wrong in this case. That we've got somebody, there's evidence here that she's been homeless since the year 2000. She's clearly depressed. It kind of goes up and down. I look at the treatment records. I mean, I've read the materials from Dr. Donnelly and Dr., I guess it's Bukhart. The treatment notes. The treatment notes. I read this late document that apparently is submitted to the Appeals Council. Do you agree with that, the one about disheveled, malodorous, and so on, And I tried to follow along. Do you have the exact ER reference for that? Yeah, 13. For 13? Yeah. Okay. And the date of service was 227-08. Right, and these are, I'll point out that these are not diagnoses. These are observations that go as part of a whole medical record. Yeah, my question, but let's first get straight. This document was in front of the Appeals Council? That's correct, Your Honor. No, no, it's clearly not a diagnosis. It's a description of the patient when she comes in. Right, but in this case, Your Honor, I'm not sure what else we could have done. I mean, we looked at all the medical evidence. It seemed conflicting and had problems, so we got a medical expert. You're saying that the evidence submitted by her treating physicians was inadequate then? No, not adequate. Inadequate to determine whether she was disabled? No, that's not correct, Your Honor. It was inconsistent. They made extreme limitations, yet by and large they gave in their mental status exams, they gave normal, except for depression and anxiety, which the ALJ found for anxiety was a condition she suffered from. They, by and large, say she was normal. How did they explain what you call a discrepancy? They don't. That's the issue that we're coming up against. The reason the ALJ rejected them is because their treatment notes show medical refills being Were you ever given an opportunity then to testify and to explain their notes? I think your notes are inadequate or however you want to phrase it, but I don't give you a chance then to testify and try to explain what I see as a discrepancy, because it very well could be I misunderstood what you were saying. In this case, if that was an issue, once again, burden is on appellant, and appellant could have provided documentation to correct that error. But on the ALJ side, often when they see something like this where there are two physicians where they don't seem to be supported even by their own treatment records, let alone the rest of the record, they get a medical expert. I look at the treatment records. I didn't find the inconsistency. I also don't see anything to support the ALJ's obvious suspicion that these documents prepared by the physicians or in the physician's office are in some way unreliable. For example, the handwriting question. It's very clear in the report prepared by Dr. Dougherty that it's not in his handwriting. There's no question about that. And we see the check marks that are by and large left alone, and some of them are changed, and each time it's changed, there's an initial D, which signals, obviously, that as he went over this, he changed. He said, okay, that's not right. But I see absolutely nothing to indicate that this is in any way a fraudulent document. I'm assuming what we had here is a low-rent county office, and the doctor did as doctors do, they dictate, and somebody else, instead of having a fancy typewriter, has very nice handwriting. And with all due respect, that could be the case, but what we have here is the fact that the ALJ gave numerous reasons, in our brief state, seven reasons for rejecting these treating positions. But never gave them an opportunity to explain what she saw as discrepancies in their records. Yes, Your Honor, but that's why the medical expert was brought in. Often ALJs... Why do you bring in a medical expert? Why not just call them to the stand and say, I think your records are inconsistent, or however you want to phrase it. ALJs are allowed to, they're a final arbiter of evidence, and they're allowed to, when they see inconsistent evidence, give it by slate. That is what they're allowed to do. 20 CFR 416.912, are you familiar with that? 912? Yes, sir. Paragraph E, recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you're disabled, we will need additional information to reach a determination or a decision. To obtain that information, we will take the following actions. I'm not going to read the whole thing, but number one, we will recontact your treating physician or psychologist. We will seek additional evidence or clarification from your medical source. When the report from your medical source contains a conflict or ambiguity that must be resolved, and blah, blah, blah, blah, blah. Right, but, Your Honor, I am very familiar with that prism. But what we have here is not that the ALJ could not make a decision. The ALJ said, Your treatment notes say one thing. You give extreme limitations. They conflict. I'm allowed to give them less weight. It's not that he felt like they were ambiguous or that he couldn't reconcile them. He said, Your treatment notes do not match your opinions, and I can give them less weight, and they are allowed to do that. I apologize. I mischaracterized the gender of the ALJ, but I think I said she instead of he. Actually, it's my apologies. It is a female. I thought it was a woman. I mean, there are lots of problems I have with this. Coming to just my overall sense, there's something went wrong. And I'm not accusing anybody, including the ALJ, of sort of dereliction of duty. You know, cases go wrong sometimes. But we've got, as you know, a very clear rule that the opinion of the treating physician controls, unless there are very clear reasons why not. And what we have is two treating physicians who are substantially in agreement, and we have an independent medical expert who has never seen the patient and is only looking at the records of the doctors, the doctors who have unambiguously given the bottom line, and the independent medical expert says, But as I read the notes, I don't believe the doctor's conclusion based upon my reading of the doctor's notes. That's pretty slender ground to me for rejecting the decision of two or the opinion of two treating physicians. Well, case law allows, and regulation allows, the ALJ to resolve discrepancy or to resolve these conflicts, and he's the final arbiter. And as long as he makes a rational conclusion with this, then his decision is upheld. I don't think the word is rational. I forget what it is, but there's a presumption in favor of treating physicians. Well, you could use reasonable. But yes. So that if an appellant comes to a different conclusion, it's not at issue. It's that the ALJ's decision here was reasonable. But in Thomas and Andrews, the two key cases here, an ALJ can reject treating physician and use a medical expert opinion for it. Of course, that's true. Right. So the reasons, there were seven reasons given by the ALJ for rejecting these, and he relied on one thing he did as a separate issue. He relied on the medical expert's opinion. He's allowed to do that when it's consistent with other evidence in the case. And then her lawyer asks for what? Another examination. Asks for another, which I believe is above and beyond what the ALJ had to do. But the ALJ left the record open. What purpose was that examination to be conducted? To make a more complete record. But the record, I believe, was adequate in order to make a decision. But this is, once again, what appellant wanted. The person to whom she was directed for this examination. The evidence I have is ER 311, which was just what they, which was the request for her to attend the CE. That's the only evidence I have. And who chooses the person who conducts the CE? That's the purview of operations. I don't know who chooses the CE, Your Honor. I mean, the agency would select it and send them, but I don't know the exact process for that. I can provide a supplemental answer to you later if you would like, but I don't know that. The ME is not our employee, though. I do want to say that the contention that we bring the MEs in just to support an end result is not correct. They're compensated, but they're not our medical experts. I'm not suggesting so. I'm a consultant on the exam for which she was scheduled. That's an outside person too? Yes. But I want to, if we can briefly get to the second issue, which is the after-submitted evidence. Here we have, after the Appeals Council stated that, and I'm going to run out of time here, maybe. Yes, say what you need to say. Okay. Regarding the after-submitted evidence, we had here, the ALJ's decision came down and said, here's our decision, if you don't like it, if you want to appeal it, you have 60 days, get us new evidence. That happened on August 28, 2007. They didn't submit their new evidence until after, sometime after March 28, 2008, many, many months later. Well, some of this evidence you see, this little statement that I read, and you're quite correct, it's not a diagnostic, it's a description. Stop observations. It is the end of February 2008, and under the Appeals Council, they're willing to consider later submitted evidence of things that happened afterwards. Here's the problem that we have in this case. There's no way to submit this stuff in 2007 because its date is February, late February 2008. Right. And the other problem we have here, though, is the fact that the Appeals Council made their final, made the determination, the ALJ's opinion was the final decision of the Commissioner. So we have that set on March 28. Later comes this evidence afterwards. Well, it comes in almost the same day. But it comes in afterwards. The Appeals Council and ER4 states. Exactly. I don't believe the Appeals Council. They didn't see it until this came out. But a day or two, I don't think is even a controversy here. They knew a long time ago, and this evidence was in existence before the ALJ. I mean, they had plenty of opportunity. But apart from that. What's the harm on this one? They're just sending it back for reconsideration. Let's just start over. Let's have an outside examination, and let's look at all the evidence. And if she loses, she loses. Well, here's the deal is that we have to be consistent in treatment of people. In this, they were given plenty. They had adequate counsel. They were able to provide the medical evidence. We even set up a medical examiner. I mean, a medical expert. Then a CE, which they didn't attend to. We even looked at additional evidence, which is, in this case, a request to reopen, which is discretionary and not subject to judicial review. But even looking at that, I can point to you, if you want to, in that even new evidence, how it actually supports the ALJ's opinion. It's consistent with it. So even if you take it into account, it's not an issue. What was the request to reopen? So here's how it would work. The ALJ I want to know how it would work. How did it work? How it worked in this case is the appeals counsel on March 28, 2008, made a decision to say the ALJ's opinion is our final decision. Anything after that is going to be a request to reopen. So we got the evidence after that. So they said this is a request to reopen. We examined the evidence. There's no reason to disturb the opinion. Was there anything in the request to reopen about her incarceration? No. Why she didn't show up? No. No, Your Honor. And there's no good cause. They never stated once why they couldn't have gotten this evidence in long before they did. Okay. Let's go to the other side. Thank you, Your Honors. Thank you, Your Honor. The legal standard is slightly misstated or not completely stated with rejection of the medical expert or accepting medical expert over the treating physician's opinion. It can only be done if it's consistent with other evidence of the record. There is no other. I'll tell you what concerns me, and you've probably got this before. You asked for a consultative examination, correct? Correct. Then your client doesn't show up. And you show up today and tell us it's because she was incarcerated. That's nowhere in the record. It is in the record. It's in the medical records. It's in the record in front of us? Correct. Where? Was that information given to the appeals counsel in any form at all? Well, it was in the records. Okay. Show us where it is in the record, and then we can go from there. Okay. At page 38, chart note, March 16, 2007, shows that she was in custody on the date of the examination of March 14, 2007. What are you reading from? The exception of the record, page 38. And what's that? Treatment notes. Treatment notes from her county facility. From her county facility? Correct. And how did that get into the record? I'm assuming that those are the records we submitted to the appeals counsel. You're assuming? Yes, because it would have to have been after the decision. I'm assuming that too, but I'm more comfortable if you can state it as a fact rather than an assumption. Yes, Your Honor. I may be beating a dead horse here. This sounds like it's actual documentation of the fact that she was incarcerated on the date. But if I'm the appeals counsel, I might need a little help interpreting the significance of this. What did you say to the appeals counsel besides just sending this piece of paper? We didn't highlight this issue because the most important issue to us is that there are no independent clinical findings for that medical expert to base his contrary opinions. You got clobbered by the failure to show up. This judge denied the case based upon the opinion of a medical expert, whose opinion was not consistent with any other part of the record, period. So all you did was slide this in. You didn't highlight it or say anything about it. The incarceration? Yes. Correct. I didn't write that particular argument, but it could be that we felt that this was the main argument, the fact that we have doctors that are supportive. There are no independent clinical findings to base the medical expert's opinion on. That opinion can't trump the treating sources, period. There are no independent clinical findings. The appellee tries to bootstrap this medical expert and says, Well, it's consistent with other evidence of the record, the state agency non-examining doctor, who had even less evidence to review. So they're basically saying 0 plus 0 equals 1. Okay. We got it. Any further questions from the bench? Okay. Thank you. Thank you for your arguments. This case is Rassas v. Ashtray, submitted for decision. And we are now adjourned. All rise.
judges: Mahan, Trott, Fletcher W.